UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────

DOUGLAS COLLIVER BRANDON

                    Petitioner,

        - against -                        09 Civ. 7720(JGK)

UNITED STATES OF AMERICA,

                    Defendant.            MEMORANDUM OPINION AND
                                                 ORDER
─────────────────────────────────

JOHN G. KOELTL, District Judge:

     The petitioner, Douglas Colliver Brandon ("Brandon" or the

"petitioner"), appearing pro se, moves pursuant to 28 U.S.C. §

2255 to vacate, set aside, or correct his sentence.  He has also

filed applications for other relief such as change of venue.


                              I.

     On June 26, 2003 Brandon was convicted by a jury of one

count of conspiracy to commit securities fraud and wire fraud in

violation of 18 U.S.C. § 371, two counts of securities fraud in

violation of 15 U.S.C. §§ 78j(b) and 78ff, and four counts of

wire fraud in violation of 18 U.S.C. §§ 1343 and 1346.  See

United States v. Rittweger, 524 F.3d 171, 176 (2d Cir. 2008)

(Sotomayor, J.), cert. denied, 129 S. Ct. 1391 (2009).

     Brandon's conviction stems from his participation in a

conspiracy to defraud customers of Credit Bancorp, Ltd. (CBL), a

1

financial services company for which Brandon served as an
"employee, attorney and agent." United States v. Rittweger, 259
F. Supp. 2d 275, 280 (S.D.N.Y. 2003) (reviewing in detail
indictment of Brandon and his co-conspirators).  According to
the superseding indictment, Brandon conspired with Thomas
Rittweger ("Rittweger"), CBL's managing director for North
America, and Richard Blech ("Blech"), CBL's president and chief
executive officer, among others, "to defraud CBL customers of at
least $210,000,000 by fraudulently inducing them to invest cash,
securities, and other assets in two CBL investment programs . .
.  in the expectation of receiving dividend payments and loans
on favorable terms," when in fact "CBL was actually a Ponzi
scheme in which proceeds of investments in the programs were
paid to earlier investors to create the false impression that
the investments were profitable in order to induce more people
to invest with CBL." Id.  The indictment alleged that Brandon
and his co-conspirators made or caused others to make numerous
knowing misrepresentations during the duration of the scheme,
including distributing "written marketing materials concerning
CBL . . . . [that] contained numerous false representations."
Id.[1]

---

[1] More specifically, the superseding indictment alleged that
"Rittweger, Brandon, Blech, and other co-conspirators knowingly
misrepresented to prospective CBL customers 1) that Brandon

Blech pleaded guilty to three of the thirteen counts of the superseding indictment in February 2003.  Id. at 282.

At Brandon's trial, the Government relied on documentary evidence, including Trust Engagement letters signed by Brandon; investor-victim testimony by three investors who described the scheme from their perspective; and the testimony of Blech, who implicated his co-conspirators.  See United States v. Rittweger, No. 02 Cr. 122, 2003 WL 22290228, at *2-*5, *8-*11 (S.D.N.Y. Oct. 6, 2003) (reviewing in detail the evidence against Brandon and concluding that "the evidence against Brandon was very powerful," and was "more than sufficient to support the jury's verdict against Brandon"), aff'd, 274 F. App'x. 78 (2d Cir. 2008) (summary order).

After the jury verdict, Brandon moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 based on the alleged

---

would act as a trustee on their behalf and would hold any assets that they invested in a custodial account; 2) that neither CBL nor Brandon would sell, margin, pledge as collateral or otherwise encumber any assets invested by the customer without authorization; and 3) that any assets invested would be returned upon the customer's request, so long as the customer's debt obligations were satisfied.  The Indictment alleges that Rittweger, Blech, Brandon and other co-conspirators fraudulently induced approximately 80 customers to invest securities and other assets worth $200,000,000 in the CBL Insured Credit Facility through such misrepresentations."  Rittweger, 259 F. Supp. 2d at at 281 (internal citations omitted).

3

insufficiency of the evidence, and for a new trial pursuant to
Fed. R. Crim. P. 33.  See id. at *1.  This Court denied both
motions.  Id. at *11.  In June 2005, Brandon was sentenced
principally to a term of 97 months' imprisonment.  United States
v. Rittweger, 274 F. App'x. 78, 80 (2d Cir. 2008) (summary
order)

        Brandon appealed his conviction to the Court of Appeals for
the Second Circuit, arguing, among other things, that this Court
erred in not granting a motion for severance of various counts,
and that the evidence was insufficient to support his
conviction.  See Rittweger, 524 F.3d at 176-77.  Brandon also
alleged that, in violation of its Brady obligations, the
Government had delayed producing to the defendant the grand jury
testimony of Virginia Allen ("Allen"), a by-then deceased co-
conspirator, and an FBI agent's debriefing notes of interviews
with Allen.  See id. at 180.  The Court of Appeals affirmed
Brandon's conviction; it rejected some arguments in a published
opinion and rejected others in a summary order.  Id. at 183;
Rittweger, 274 F. App'x. at 84.  The Court of Appeals found that
"th[e] evidence would allow a rational juror to find Brandon
guilty of the fraud and conspiracy."  Id. at 81.[2]  In February

---

[2] While the appeal was pending, Rittweger again moved pursuant to
Rule 33 for a new trial based on purported new evidence.  This
Court denied the motion and the denial was affirmed on appeal.

4

2009, the United States Supreme Court denied Brandon's petition for a writ of certiorari.  United States v. Rittweger, 129 S. Ct. 1391 (2009)

In August 2009, Brandon filed the present motion in this Court to vacate, set aside, or correct his sentence pursuant to 18 U.S.C. § 2255.[3]  Brandon also filed a substantially similar petition for habeas corpus in the Eastern District of Kentucky, and that court dismissed that case in January 2011 for lack of jurisdiction because Brandon had not established that his remedy under § 2255 in this Court was inadequate or ineffective. See Brandon v. Holland, No. 10 Civ. 117 (DLB), 2011 WL 87183, at *3 (E.D. Ky. Jan. 6, 2011).

Brandon makes two major substantive claims in this § 2255 motion.  First, in his initial motion, Brandon points primarily to a complaint (the "Curacao Complaint") filed in Curacao, Netherlands Antilles, in December 2008 by an attorney claiming to represent Credit Bancorp N.V., a Netherlands Antilles company affiliated with CBL.  (See Pet. Ex. 1 ("Grounds"), at 1-2; Pet. Ex. 2 ("Curacao Compl."), at 1, 23).  The Curacao Complaint

---

See United States v. Rittweger, 2007 WL 1975490, at *1-*2 (S.D.N.Y. July 9, 2007), aff'd 309 F. App'x. 504, 505-506 (2d Cir. 2009) (summary order).

[3] The motion was received by the Pro Se Office on August 21, 2009, and filed with the Clerk on September 8, 2009.

attributes statements to Blech retracting or contradicting the statements made in Blech's guilty plea allocution and in his trial testimony, and alleging, for example, that Blech was "under coercion and threat" from the Government and "told by the District Attorney [sic] what to say." (Curacao Compl. ¶ 3.8). The Curacao Complaint also alleges that Blech "was promised a considerably reduced sentence  under the mildest punishment regime in a prison in California." (Curacao Compl. ¶ 3.5.) Brandon argues that the Curacao Complaint undermines the evidence against him at trial, particularly Blech's trial testimony, and otherwise raises questions about whether he received a fair trial. Second, Brandon has filed supplemental papers arguing that his conviction should be vacated in light of the Supreme Court's recent decision in Skilling v. United States, 130 S. Ct. 2896 (2010).

## II.

### A.

Brandon's first two grounds for his initial § 2255 motion are based on the Curacao Complaint.  In Ground One, Brandon argues that the Government violated its obligations under Brady because the Government failed to disclose to the defense that Blech was "coerced" into giving false testimony, and that

6

Blech's guilty plea was the result of coercion and the promise of a sentence reduction.  In Ground Two, Brandon alleges that Blech's trial testimony was false and that he Court should examine the authenticity of all documents authenticated by Blech in view of the statements attributed to Blech in the Curacao Complaint.

"It is axiomatic that witness recantations 'must be looked upon with the utmost suspicion.'" Haouari v. United States, 510 F.3d 350, 353 (2d Cir. 2007) (rejecting a successive § 2255 petition based on co-conspirator's unsworn, uncorroborated recantation letter) (internal citation omitted) (collecting cases).  Indeed, suspicions are "even greater" when the recanting witness is a co-conspirator who has already been sentenced and who has obtained the benefit of a cooperation agreement and has "nothing to lose by recanting." Id.  At the very least, before a recantation statement may qualify as competent evidence for habeas review, it must be in a sworn affidavit, subject to the penalties for perjury.  Id. at 354; see Salazar v. Espinoza, No. 11 Civ. 0247, 2011 WL 2946166, at *2 (S.D.N.Y. July, 11, 2011).

Even if a petitioner presented an affidavit alleging recantation, those allegations must be assessed in the context of all the evidence to determine whether the petitioner has made

7

a sufficient showing to warrant an evidentiary hearing or whether "the motion and the files and records conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); see also Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009) (to warrant an evidentiary hearing on a claim of ineffective assistance of counsel, the petitioner must establish a "plausible" claim); United States v. Aiello, 814 F.2d 109, 113 (2d Cir. 1987) ("Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing."); Florez v. United States, No. 07 Civ. 4965, 2009 WL 2228121, at *11 (E.D.N.Y. July 24, 2009) ("An evidentiary hearing is necessary only where a petitioner establishes a 'plausible claim' of perjury-one not plainly disproved by the totality of evidence and that, if true, would entitle him to collateral relief.") (citation omitted).

In this case, the Curacao Complaint does not begin to establish a basis for relief under § 2255, or to warrant an evidentiary hearing.  The Curacao Complaint is not a sworn affidavit by Blech.  It consists of hearsay statements by an attorney for an affiliate of CBL that were made in a pleading seeking to obtain relief for that company.

Moreover, the statements are entitled to even less weight because they have been specifically repudiated by Blech.  The

8

Government brought the Curacao Complaint to the attention of the Court in connection with the terms of Blech's continued supervised release.  In a letter to his attorney which he authorized to be presented to the Court, Blech completely disavowed the representations made on his behalf in the Curacao Complaint with regard to his plea and trial testimony, telling this Court that "ALL of my testimony that I gave at the criminal trial and my statements made to the government, were truthful then and they are truthful today," and that "I gave my testimony freely, voluntarily, and without coercion from the government." (April 20, 2009 Letter of Richard J. Blech, <u>United States v. Rittweger</u>, 02 Cr. 122, Docket No. 285 at 3.)  Moreover, the lawyer who signed the Curacao Complaint wrote to this Court that the Curacao Complaint "in no way seeks to diminish, alter or recant the factual findings of your Honor in regard to the offenses committed by Richard J. Blech in his guilty plea." (April 27, 2009 Letter of Andre C. Small, <u>United States v. Rittweger</u>, 02 Cr. 122, Docket No. 288 at 9.)[4]

Furthermore, the conclusory, hearsay statements in the Curacao Complaint would not be entitled to any credence, because

---

[4] The Curacao Complaint does not actually appear to exculpate Brandon.  Rather, it blames him and Rittweger for CBL's wrongful acts, noting that "Rittweger and Brandon . . . after all, had committed acts in violation of SEC rules."  Curacao Compl. ¶ 3.4.

they are simple denials of the sworn testimony by Blech at his
plea allocution and in his sworn trial testimony.  At his plea
allocution, Blech affirmed, under oath, that he was pleading
guilty voluntarily and of his own free will, and affirmed to the
Court that he had not been offered any inducement, or been
threatened or forced to plead guilty or to enter into the plea
agreement.  (Feb. 6, 2003 Trial Tr., United States v. Rittweger,
02 Cr. 122, at 19, 26.)  Blech also swore that there were no
understandings with the Government other than those reflected in
the plea agreement.  (Id. at 19).  His trial testimony
implicating Brandon was, similarly, under oath.  Such "[s]olemn
declarations in open court carry a strong presumption of
verity."  United States v. Rivas, 99 F.3d 401, 1995 WL 736547,
at *1 (2d Cir. 1995) (table) (quoting Blackledge v. Allison, 431
U.S. 63, 74 (1977)).

Finally, Brandon's own involvement in the scheme was and
remains supported by clear documentary evidence, most obviously
the Trust Engagement letters which he signed that contained
false representations that he had control over the accounts into
which the securities would be placed, despite the fact that he
had no such control.  See Rittweger, 2003 WL 22290228, at *2-*5,
*8-*11.

10

Therefore, there is no viable claim that the § 2255 motion should be granted on the ground that the Government did not disclose to the defendant the alleged coerced guilty plea of Blech.  There is no basis to conclude that the guilty plea was anything but truthful, knowing and voluntary.  Similarly, there is no basis for the second alleged ground for relief in the § 2255 motion, namely that Blech committed trial perjury.  Blech's trial testimony, and his authentication of documentary evidence against Brandon at trial, remain unaffected by the Curacao Complaint.  Brandon's first and second asserted grounds for relief lack merit and are denied.

## B.

Brandon's third asserted ground for relief relies on the fact that the judgment of restitution against him was satisfied, in part with the proceeds of an insurance policy which he "was instrumental in obtaining" for the benefit of investors. (Grounds at 2.)  Brandon argues that because the insurance covered the loss, "there was no loss to the investors, and thus there was no Ponzi scheme."  (Grounds at 2.)

As an initial matter, to the extent that Brandon's claim that "there was no Ponzi scheme" is a challenge to the sufficiency of the evidence against him, that challenge is

barred because the Court of Appeals has already heard, and
rejected, Brandon's challenge to the sufficiency of the evidence
for his conviction.  See Rittweger, 274 F. App'x. at 81; see
generally Abbamonte v. United States, 160 F.3d 922, 924 (2d Cir.
1998) ("[P]etitioners may not raise on collateral review a claim
previously litigated on direct appeal").  Indeed, the failure to
raise a claim on direct appeal will generally bar consideration
of the claim in a § 2255 motion unless the movant can establish
cause and prejudice or actual innocence.  See Bousley v. United
States, 523 U.S. 614, 622 (1998); Sapia v. United States, 433
F.3d 212, 217 (2d Cir. 2005).

Moreover, Brandon's argument that the judgment of
restitution against him has been satisfied does not suggest that
the evidence was insufficient to establish his guilt beyond a
reasonable doubt.  See Feb. 10, 2009 Satisfaction of Judgment,
United States v. Rittweger, 02 Cr. 122, Docket No. 281.  Brandon
argues that the investors were eventually paid from various
assets, including the proceeds of insurance policies that he was
instrumental in obtaining.[5]  The argument is frivolous.  The fact
that investors were eventually compensated by insurance proceeds
does not mean that there was no loss, and moreover a scheme to

---

[5] The Government disputes that the investor losses were in fact
fully paid. (See October 3, 2008 Letter of the Government,
Gov't Mem. Ex. B.)

defraud can exist even where investors ultimately suffer no
loss.  See, e.g., United States v. Gelb, 881 F.2d 1155, 1162-63
(2d Cir. 1989).  Brandon's third asserted ground for relief
lacks merit and is denied.

## C.

Brandon's fourth asserted ground for relief is that the
Government did not advise him early enough that Allen was
terminally ill, and that he was thus unable to depose her before
she died.  Brandon argues that the Curacao Complaint
demonstrates that there were many matters in Blech's trial
testimony that were false and could have been rebutted by Allen.
Brandon argues that he should be allowed to subpoena documents
and testimony from Allen's attorney which, he alleges, would
confirm these assertions.

As explained above, the Curacao Complaint provides no basis
for relief.  Moreover, Brandon has already raised the issue of
the Government's delayed production of prior statements by Allen
as an issue on direct appeal.  See Rittweger, 524 F.3d at 176,
180.  The Court of Appeals found that, while the Government
should have produced the information earlier, "there is no
probability that the government's late disclosure of the
evidence resulted in a different outcome in Brandon's case . . .

13

. The exculpatory information was . . . put before the jury and Brandon was able to assimilate the materials into his case for 'its effective use at trial.'"   Id. at 182.   To the extent that Brandon is arguing that he should now be entitled to § 2255 relief to pursue further information from Allen's lawyer, he has failed to show cause and prejudice or a claim of actual innocence for failing to pursue that argument on direct appeal, if in fact it is distinct from the argument he already raised on direct appeal that was rejected by the Court of Appeals.

## D.

Finally, Brandon argues that "the cumulative effect" of the above four grounds, combined with "the Brady violations found by the Court of Appeals," deprived him of a fair trial.  (Grounds at 2.)  As explained above, the first four grounds for relief asserted by Brandon are meritless, and thus they have no cumulative effect.  As Brandon points out, the Court of Appeals has already addressed the alleged Brady violations about which he complains, and he may not raise the issue again in this petition.  Brandon's fifth asserted ground for relief is thus without merit and is denied.

14

### III.

After he filed his original §2255 motion, Brandon filed applications to supplement his motion to add an allegation that his conviction should be vacated in light of the Supreme Court's recent decision in Skilling, 130 S. Ct. 2896.  As an initial matter, Brandon's application to supplement his petition to include his Skilling argument is granted.  The Government has responded on the merits and Brandon has replied.

In addition to two counts of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff, Brandon was convicted of one count of conspiracy to commit securities fraud and wire fraud in violation of 18 U.S.C. § 371 and four counts of wire fraud in violation of §§ 1343 and 1346.  The scope of the wire fraud statute includes "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises . . . ."  18 U.S.C. § 1343.  Section § 1346 provides that a "scheme or artifice to defraud includes a scheme or artifice to deprive another of the intangible right to honest services."  18 U.S.C. § 1346.

In Skilling, the Supreme Court considered whether Skilling, the former Chief Executive Officer of Enron, was convicted on "an improper theory of honest-services wire fraud."  See Skilling 130 S. Ct. at 2925.  Skilling had argued that § 1346's

15

language was void for vagueness, or, alternatively, that his actions did not come within its coverage.  The Supreme Court applied a limiting construction to § 1346, and concluded that it should be limited to "fraudulent schemes to deprive another of honest services through bribes or kickbacks supplied by a third party who had not been deceived."  Id. at 2928.  Skilling had been convicted of conspiracy and securities fraud, among other crimes, and the conspiracy count had "alleged three objects of the conspiracy—honest-services wire fraud, money-or-property wire fraud, and securities fraud."  Id. at 2934.  In Skilling's case, there had been only a general verdict on the conspiracy charge, and it was thus unclear whether there was a valid basis independent of honest services fraud for the conspiracy conviction.  Id.  The Court thus remanded Skilling's case to the Court of Appeals for the Fifth Circuit to determine whether Skilling's conspiracy conviction could stand, and whether, as Skilling alleged, his other convictions "hinged on the conspiracy count and, like dominoes, must fall."  Id. at 2934-35.

There was never an allegation against Brandon of bribery or kickbacks.  Brandon argues that, under Skilling, his convictions under §1346 are therefore invalid.  The issue is whether Brandon's wire fraud and conspiracy convictions were based

16

solely or inextricably on the theory that Brandon was part of "a scheme to deprive another of the intangible right of honest services," § 1346, such that, in the acknowledged absence of any allegation of a bribe or kickback, the convictions run afoul of Skilling and must be vacated.

Here, for each count of the indictment involving wire fraud, the jury completed a special verdict sheet explicitly explaining whether it had based its verdict on a money or property theory, or an honest services theory.  (See Verdict Form, Dated, June 26, 2003, Entered June 30, 2003, United States v. Rittweger, 02 Cr. 122 ("Verdict Form"), at 1-4.)  For Count One, conspiracy to commit securities fraud and wire fraud, the jury was asked whether it was the object of the conspiracy to commit securities fraud or wire fraud.  (Verdict Form at 1.) The jury chose both.  (Verdict Form at 1.)  The verdict form further asked whether it was the object of the conspiracy to commit wire fraud "to obtain money or property," or "to deprive another of the intangible right to honest services."  (Verdict Form at 1.)  Again, the jury chose both.  (Verdict Form at 1.) Similarly, for each of the four wire fraud counts, the jury was asked whether it found that there was "a scheme to obtain money or property," or "a scheme to deprive another of the intangible right to honest services."  (Verdict Form at 4.)  Again, the

17

jury found both.  (Verdict Form at 4.) It is clear from the special verdict form that, for every count relating to wire fraud, the jury found Brandon guilty on both a money or property theory and an honest services theory of fraud. As the Skilling Court noted, the constitutional error of instructing a jury on an invalid theory of guilt is subject to harmless error analysis.  See Skilling, 130 S. Ct. at 2934 (citing Hedgepeth v. Pulido, 555 U.S. 57 (2008) (per curiam); see also United States v. Dupre, 462 F.3d 131, 139 (2d Cir. 2006) ("We will vacate a conviction on the basis of erroneous jury instructions if a defendant . . . can demonstrate that the charge actually given . . . caused her prejudice." (citing Neder v. United States, 527 U.S. 1, 8–15 (1999))).  Here, because the verdict form makes explicit that the jury found an independent and valid basis for Brandon's conviction on the conspiracy count and each of the wire fraud counts, any error in the application of § 1346 was harmless.  Cf. United States v. Skilling, 638 F.3d 480, 483–484 (5th Cir. 2011) (on remand, finding, "[b]ased on our own thorough examination of the considerable record in this case, . . . that the jury was presented with overwhelming evidence that Skilling conspired to commit securities fraud, and thus we conclude beyond a reasonable doubt that the verdict would have been the same absent the alternative-theory error.").  Because

the jury's verdict on each of the challenged counts was clearly based on a ground unaffected by Skilling, the verdict stands unaffected.

Brandon argues that the securities fraud counts are also challengeable under Skilling.  There is no merit to this argument.  This Court's jury charge makes plain that the securities fraud charges were based on making false and misleading statements, not on an "honest services" theory.  This Court's charge to the jury explained that the securities fraud counts against Brandon were based on Brandon's "participat[ion] in a scheme to defraud customers of CBL by fraudulently inducing them to invest in CBL investment programs by making, and causing others to make, false and misleading statements about CBL investment programs."  (June 19, 2003 Trial Tr., United States v. Rittweger, 02 Cr. 122 ("Jury Instructions"), at 3569.)

To the extent that Brandon can be understood to argue that Skilling's limitation on the meaning of the intangible right to honest services to bribery and kickbacks also limits the duty owed by a fiduciary making representations about securities, this argument is without merit.  The only place where the issue of duty even arose in this Court's instructions to the jury on the securities fraud counts was in its instruction on the fiduciary duty to disclose, the violation of which makes

19

material omissions actionable instances of securities fraud under the established law of this circuit. See Jury Instructions at 3570-72; United States v. Wolfson, 642 F.3d 293, 295-96 (2d Cir. 2011) (per curiam) (upholding identical instruction to jury on fiduciary duty in securities fraud case); United States v. Szur, 289 F.3d 200, 209-210 (2d Cir. 2002) (same). Nothing in Skilling's interpretation of § 1346 casts doubt on the law of this circuit with respect to the element of duty as it relates to omissions in establishing securities fraud. See Wolfson, 642 F.3d at 295-96. There is no basis for asserting that Skilling applies to Brandon's securities fraud convictions.

## IV.

Brandon has also moved for a change of venue to the Eastern District of Kentucky, where he is currently incarcerated. However, as Judge Bunning noted when he refused jurisdiction over Brandon's motion, this Court is the proper venue for the motion. See Brandon, 2011 WL 87183 at *2 (citing Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir.2003); accord Poodry v. Tonawanda Band of Seneca Indians, 85 F.3d 874, 890 n.17 (2d Cir. 1996) ("Section 2255 is essentially a venue provision, requiring a motion to the sentencing court rather than an application to

the district court in the district in which the prisoner is confined."); see generally 28 U.S.C. § 2255(a), (e).

Brandon has not made the required showing that a § 2255 motion before this Court would be "inadequate or ineffective to test the legality of his detention."  § 2255(e); see generally Cephas v. Nash, 328 F.3d 98, 104 (2d Cir. 2003) (discussing "relatively few" circumstances in which "a petitioner can show that a motion" qualifies for the savings clause of § 2255(e)). Brandon's motion for a change of venue is therefore denied.

### IV.

Brandon has also sought bail.  However, because there is no merit to Brandon's motion to vacate, set aside, or correct his sentence, there is no merit to his application for bail.

Similarly, Brandon has sought the appointment of counsel. However, because he has not made any showing that any of his claims have likely merit, the application for counsel is denied.

Brandon has also complained about his health.  Health complaints, however, are not a basis for relief under § 2255. These complaints should be brought to the attention of the Bureau of Prisons and Brandon should seek relief from the Bureau of Prisons.  Because Brandon has raised this issue, however, the Court directs the Government to bring Brandon's health

complaints to the attention of the Bureau of Prisons and to obtain a report for the Court on the current status of the treatment of Brandon's medical conditions.

## Conclusion

The Court has carefully considered all of the parties' arguments. To the extent they are not dealt with above, they are either moot or without merit. For the reasons explained above, the petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is **denied**. The petition is therefore dismissed. Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c). The Clerk is directed to enter judgment dismissing the petition and closing this case. The Clerk is also directed to close all pending motions.

**SO ORDERED.**

Dated:     New York, New York
           October 10, 2011

John G. Koeltl
United States District Judge